THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| LEXJET, LLC,<br>ABAQA, LLC, and<br>BRAND MANAGEMENT GROUP, LLC,<br><br>                    Plaintiffs,<br><br>                    v.<br>UNITED STATES,<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)     Court No. 26-cv-03150<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Lexjet, LLC, Abaqa, LLC, and Brand Management Group, LLC ("Lexjet" or "Plaintiffs"), by and through the undersigned counsel, Kyl J. Kirby, Attorney and Counselor at Law, P.C., alleges and states as follows:

## DETERMINATION CONTESTED

1.  Plaintiffs contest the June 8, 2026, Determination Not to Initiate a Changed Circumstances Review ("CCR") issued by the U.S. Department of Commerce ("Commerce"), declining to initiate a CCR requested by Plaintiffs to 100% polyester print canvas from the scope of the antidumping duty ("ADD") order on artist canvas from the People's Republic of China. *See* Letter from U.S. Department of Commerce to Plaintiffs, "Antidumping Duty Order on Certain Artist Canvas from the People's Republic of China", "Whether to Initiate a Changed Circumstances Review" (A-570-899) (Jun. 8, 2026) ("Determination Not to Initiate CCR").

## JURISDICTION

2.     Plaintiffs bring this action pursuant to section 1581(i) of the Customs Courts Act of 1980, 28 U.S.C. § 1581(i) (2000) and the Administrative Procedure Act, 5 U.S.C. §§ 702,

1

704, 706 (2000). This civil action challenges actions taken by Commerce in connection

with the administration and enforcement of U.S. ADD laws. The

relevant statutory provisions conferring section 1581(i) jurisdiction on this Court state:

> (c) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced under section 516A or 517 of the Tariff Act of 1930. . . .
> (i) (1) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for— . . .
> (B) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue; . . . or
> (D) administration and enforcement with respect to the matters referred to in subparagraphs (A) through (C) of this paragraph and subsections (a)–(h) of this section.

28 U.S.C. § 1581.

Specifically, the Court has jurisdiction over Plaintiffs' action pursuant to

28 U.S.C. § 1581(i)(1)(B) and/or 28 U.S.C. § 1581(i)(1)(D), because it sets forth claims

against the United States arising out of the laws of the United States providing for duties

on imports "for reasons other than the raising of revenue," as well as the "administration

and enforcement" by Commerce of such "matters." Commerce's unpublished

determination not to initiate a CCR is "a final determination, other than a {Final

ADD/CVD investigation} determination, by {Commerce} . . . under section 1675 of this

title." 19 U.S.C. § 1516a(a)(2)(B)(iii). However, a determination by Commerce – as

contrasted with a determination by the U.S. International Trade Commission – "not to

review a determination based on changed circumstances" does not appear to be enumerated

as an appealable determination under 19 USC § 1516a(a). The Court of International Trade

has accordingly recognized jurisdiction lies under 28 U.S.C. § 1581(i) for appeals of

Commerce determinations not to initiate CCRs. *See e.g., Greenfirst Forest Prods. Inc. v. United States*, 604 F. Supp. 3d 1368, 1370 (CIT 2022). Moreover, "because Commerce did not publish its refusal to initiate the Second Changed Circumstances Review in the Federal Register, there is also no current basis for jurisdiction under 28 U.S.C. § 1581(c). See 19 U.S.C. § 1516a(a)(2)(B)(iii) (specifying certain final determinations made in connection with changed circumstances review as reviewable determinations under 28 U.S.C. § 1581(c)); id. § 1516a(a)(2) (A)(i)(I) (2000) (authorizing commencement of 28 U.S.C. § 1581(c) action within thirty days of Federal Register publication of notice of relevant agency action); accord AOC, 17 CIT at 1414." *Trustees of N. Amer. Rubber Thread v. U.S.*, 464 F.Supp.2d 1350, 1363 (Ct. Int'l Trade 2006). *See also Trustees in Bankr. of N.A. Rubber Thread v. U.S.*, 593 F.3d 1346, 1353 (Fed. Cir. 2010). If jurisdiction is available under a different provision of 28 USC § 1581, the Court of International Trade has jurisdiction over this action under 28 U.S.C. § 1581(i)(1)(B) and (D) because the remedy provided under such a provision would be manifestly inadequate. *Hous. Shutters v. United States*, 24-00193, Slip Op. 26-7, *4 (Ct. Int'l Trade Jan 29, 2026) ("The new information not available during the investigation directly relates to whether Commerce should have initiated a CCR, which in turn directly goes to Plaintiff's alleged basis for jurisdiction under § 1581(i).").

3.    Although Plaintiffs do not believe that 28 U.S.C. § 1581(c) provides the Court with jurisdiction for this matter, based on Commerce's legal assertions, this Court may have alternative jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) and Section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I), 1516a(a)(2)(B)(iii).

3

**STANDING OF PLAINTIFF**

4.      Plaintiffs are U.S. importers of 100% polyester print canvas from China, and Plaintiffs requested the CCR that resulted in the contested determination. Plaintiffs are interested parties as defined in 19 U.S.C. §§ 1516a(f)(3), 1677(9)(A).

5.      Concerning an action under 28 U.S.C. § 1581(i), Plaintiffs have standing because they were "adversely affected or aggrieved by agency action within the meaning of" the Administrative Procedures Act. 5 USC § 702; *see also* 28 USC § 2631(i) ("Any civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5."). Commerce's wrongful denial of Plaintiffs' request to initiate a CCR adversely affected and aggrieved Plaintiffs by forcing Plaintiffs to pay ADD, penalties, and interest.

6.      Concerning an action under 28 U.S.C. § 1581(c), Plaintiffs therefore are parties to the proceeding and are entitled to commence this civil action pursuant to 28 U.S.C. § 2631(c), and section 516A(d) of the Act (19 U.S.C. § 1516a(d)). Additionally, having been adversely affected by agency action, Plaintiffs have standing pursuant to 28 U.S.C. § 2631(i) that gives the U.S. Court of International Trade jurisdiction over actions commenced by any person adversely affected or aggrieved by agency practice within the meaning of 5 U.S.C. § 702.

**TIMELINESS OF THE ACTION**

7.      A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i). The instant action contests Commerce's denial of Plaintiff's Request for CCR. On June 8, 2026, Commerce

issued its Determination Not to Initiate a CCR requested by Plaintiffs seeking to exclude 100% polyester print canvas from the scope of the ADD Order on Certain Artist Canvas from the People's Republic of China, via posting on its Antidumping Duty and Countervailing Duty Centralized Electronic Service System ("ACCESS"). This Summons and Complaint being filed today, therefore, are timely filed within the time specified in 28 U.S.C. § 2636(i), having been filed within two years after Plaintiff's cause of action accrued.

8.      Further, this action was commenced within 30 days after Commerce's denial. Accordingly, this action is also timely commenced under 28 U.S.C. § 1581(c) pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and 1516a(a)(2)(B)(iii) and 28 U.S.C. § 2636(c).

## BACKGROUND AND STATEMENT OF FACTS

9.      In June 2006, Commerce published ADD order on Artist Canvas from China. *Notice of Antidumping Duty Order: Certain Artist Canvas from the People's Republic of China*, 71 FR 31154 (Jun. 1, 2006) ("ADD Oder").

10.     The scope of the ADD Order is as follows:

The products covered by this investigation are artist canvases regardless of dimension and/or size, whether assembled or unassembled, that have been primed/coated, whether or not made from cotton, whether or not archival, whether bleached or unbleached, and whether or not containing an ink receptive top coat. Priming/coating includes the application of a solution, designed to promote the adherence of artist materials, such as paint or ink, to the fabric. Artist canvases ( *i.e.*, pre-stretched canvases, canvas panels, canvas pads, canvas rolls (including bulk rolls that have been primed), printable canvases, floor cloths, and placemats) are tightly woven prepared painting and/or printing surfaces. Artist canvas and stretcher strips (whether or not made of wood and whether or not assembled) included within a kit or set are covered by this proceeding.

Artist canvases subject to this investigation are currently classifiable under subheadings 5901.90.20.00 and 5901.90.40.00 of the Harmonized Tariff Schedule of the United States ("HTSUS"). Specifically excluded from the scope of this investigation are tracing cloths, "paint-by-number" or "paint-it-yourself" artist

canvases with a copyrighted preprinted outline, pattern, or design, whether or not included in a painting set or kit. Also excluded are stretcher strips, whether or not made from wood, so long as they are not incorporated into artist canvases or sold as part of an artist canvas kit or set. While the HTSUS subheadings are provided for convenience and customs purposes, our written description of the scope of this proceeding is dispositive.

Additionally, we have determined that canvas woven and primed in India but cut and stretched in the PRC and exported from the PRC is not subject to the investigation covering artist canvas from the PRC.

ADD Order, 71 FR 31154 at 31155.

11. During the course of the ADD investigation that led to issuance of the ADD Order, Tara Materials Inc ("Tara"), the petitioner, did not express an interest in 100% polyester print canvas. Letter from Plaintiffs to Commerce (January 26, 2026) ("CCR Request").

12. The following are facts during the investigation petition phase:

- When speaking to common manufacturing facilities, production processes, and production employees, Tara spoke to "all cotton or cotton/polyester blend fabric" and not 100% polyester. CCR Request at 5

- Tara stated that artist canvas "could" be made up of 100% polyester in its petition, but Tara did not make 100% polyester print canvas in 2005 at the time of the petition. *Id*.

- Tara presented marketing materials that did not include 100% polyester print canvas that included, "Fredrix Inkjet Canvas - A fine quality Polyflax/cotton canvas for printing on large-format and desktop inkjet printers.". *Id*. at 6

13. The following are facts from the preliminary conference with the International Trade Commission ("ITC"):

- The ITC requested Tara to provide a production estimate of 100% polyester but Tara did not provide the data in its follow-on brief. *Id*.

- When likely referring to 100% polyester print canvas, Tara stated that there is no demand for "cheap Chinese product in canvas". *Id*.

- Tara stated that it could produce a price list for polyester blend, linen, and cotton with no mention of 100% polyester print canvas. *Id*.

- When Tara provided follow-up pricing, Polyflax (polyester/cotton blends)[1] products were presented as 100% polyester fabric *Id*. at 7

- Marketing materials presented by Tara and other parties included 100% cotton, Polyflax/cotton, and 100% Polyflax, with no 100% polyester print canvas *Id*.

14.    In its injury pricing requests, Tara never suggested to have 100% polyester print canvas as part of the questionnaires and the ITC subsequently did not include a 100% polyester print canvas in its questionnaires. *Id*. at 10

15.    Some 20 years later Ecker (now through Blick Art Materials, LLC) markets its Polyflax as poly/cotton. *Id*. at 11

16.    During the five-year sunset review Tara did not inform the ITC that it was not producing 100% polyester print canvas. *Id*.

17.    In its 2015 scope ruling request Tara stated that artist canvas "may be" composed of 100% polyester but Tara made no 100% polyester print canvas in 2015. *Id*.

18.    Tara's misstatements and omissions during the investigation, sunset review, and scope ruling denied the ITC's ability to look to clear "dividing lines" among 100% polyester print canvas and other print canvases where Tara did not have an interest in

---

[1] During the public hearing with the ITC Tara confirmed that its Polyflax product is made up of polyester and cotton fibers. *Id*. at 10.

100% polyester print canvas, with no material injury to domestic producers that do not exist. *Id*.

19.    It is unclear whether Tara and its subsequent purchaser, Ecker Textiles LLC ("Ecker"), ever made a 100% polyester print canvas. *Id*. at 12

20.    Tara and Plaintiffs had two consecutive memorandum of understanding agreements where Tara had manufacturer rights with a first right of refusal and Tara executed a letter stating that one of Plaintiffs' 100% polyester print canvas was out of scope of the ADD Order. *Id*.

21.    Tara and Ecker never considered 100% polyester a canvas or an artist canvas. *Id*.

22.    Tara had knowledge of Plaintiffs' contract manufacturing from China and acquiesced as such to Lexjet's 100% polyester print canvases from China. *Id*.

23.    In 2016, Plaintiffs and Tara launched a co-developed a coated fabric (unlike any Lexjet product) that was fraught with quality and production volume issues that ultimately the co-development relationship. *Id*. at 13.

24.    Tara and Ecker failed to modernize their antiquated equipment (different from more efficient modern) and has lacked a quality and innovation culture. *Id*. at 16.

25.    A single machine now performs any coating (i.e., bottom coat or top inkjet like coat), which is different from equipment relied upon during the investigation. Tara asserted that its equipment was more than "[a] coating line can be operated by between one and three employees" and that "[o]perators basically monitor an inspection station where the substrate automatically feeds through the equipment." … and that "[t]he technical expertise needed to apply the print canvas coating is minimal; merely requires one to three operators to monitor the coating process." The ITC relied on these assertions in making a domestic

producer distinction stating, "Petitioner also makes the point that the production-related activities of the coaters – the makers of the bulk canvas – are significantly greater than the production-related activities of print converters. In Tara's case, for example, the capital investment for producing bulk canvas that is used by print converters is approximately $***, including coating lines (***), $*** for inspection equipment, $*** million for chemical making equipment, and $*** for handling equipment. Bulk operations at Tara alone employ *** production workers." *Id*.  Thus, Ecker is nothing more than an archaic, inefficient print converter that is not engaged in sufficient production-related activity to constitute domestic producer. *Id*. at 17. Tara and Ecker have failed to disclose this in their sunset reviews. *Id*.

26.     Since 2020, Fredrix has marketed a "100 % polyester" print canvas under the name of PANORAMA 1008SJ in widths of 80", 98", and 126" but Ecker states on its website the product is a polyester blend (presumably of polyester and cotton) and Ecker does not possess and operate equipment wide enough to accommodate the aforementioned widths. Additionally, an Ecker distributor markets the product as Polyflax (presumably of polyester and cotton). *Id*. 17-20

27.     Plaintiffs on April 23, 2026, filed their CCR request seeking to exclude 100% polyester print canvas from the scope of the ADD Order. In addition to stating the above new facts that were unknown during the investigation and later proceedings, Lexjet proved the following in the Letter from Plaintiffs to Commerce (April 23, 2026) ("CCR Request"):[2]

---

[2] Plaintiffs submitted a separate CCR to Commerce on January 26, 2026.

- Tara and Ecker have had and have a lack of interest in producing 100% polyester print canvas and have expressed their intent and interest as such. *Id*. at 2

- Ecker accounts for mostly all of print canvas domestic production *Id*.

- Tara and Ecker have been the only parties to participate in the §751(c) sunset reviews since 2016. *Id*.

- Commerce should also revoke the *Order*, in part for 100% polyester print canvas or in whole for all print canvas, based on "Other changed circumstances sufficient to warrant revocation or termination exist." 19 C.F.R. § 351.222(g)(1)(ii). *Id*. at 12, 17

- Ecker falsely posits that it currently produces two 100% polyester print canvases (Fredrix Panorama 1008SJ and Fredrix 520 Red Lion Polyflax). *Id*. at 22-28

- Ecker absolutely provided no proof production for any 100% polyester print canvas. *Id*. at 28

- A revocation of the ADD Order is likely to not lead to continuation or recurrence of material injury. *Id*. at 34

- Tara and Ecker's fraudulent omissions and misstatements throughout the investigation and the CCR are of further cause to initiate a CCR. *Id*.

- Plaintiffs have clearly met the burden of persuasion with respect to whether there are changed circumstances sufficient to warrant revocation of the ADD order back to the date of the antidumping duty ADD Order, i.e., June 1, 2006. *Id*. at 3, 34

28.    Ecker on April 29, 2026, filed an opposition to Plaintiffs' CCR Request, falsely claiming it was interested in keeping those products covered by the ADD Order and that Plaintiffs' request was deficient. Ecker provided no evidence that Tara or it actually made or makes 100% polyester print canvas. Letter from Ecker to Commerce (April 29, 2026).

10

29.    Plaintiffs on June 2, 2026, filed a rebuttal, providing doubt as to the basis for Ecker's opposition in alerting Commerce:

- There is no deficiency in Plaintiffs' CCR. *Id*. at 1.

- Plaintiffs' facts and assertions, substantial evidence, clearly show Ecker's and Tara's lack of interest in producing 100% polyester print canvas. *Id*. 1, 3

- Ecker incorrectly asserted that an affirmative statement from domestic producers is required for a CCR. *Id*. at 2-3

- Any Commerce decision to not initiate a CCR to partially revoke the ADD Order would be unlawfully predicated on misstatements, omissions, and false statements made by Tara and Ecker. *Id*. at 2

- Ecker has produced no facts, no proof of production, not a scintilla of evidence, but only false statements that unnecessarily detract from the entire record. *Id*. at 3

- There is no rational connection between the Tara/Ecker record and a Commerce decision not to initiate a CCR. *Id*.

- Commerce is required to protect the integrity of its proceedings pursuant to 19 CFR § 351.222(g)(1)(ii) based on misstatements, omissions, and false statements from Tara and Ecker

30.    Commerce on June 8, 2026, issued its unpublished Determination Not to Initiate CCR without verifying any production or interest of 100% polyester print canvas by neither Tara nor Ecker. Commerce took Ecker's false assertions at face value.

<u>**STATEMENT OF CLAIMS**</u>

<u>**COUNT ONE**</u>

31.    Paragraphs 1 to 30 are adopted and incorporated herein by reference.

32.      In its CCR Request, Plaintiffs provided information "which shows changed circumstances sufficient to warrant a review" of the ADD Order's scope with respect to 100% polyester print canvas. 19 U.S.C. § 1675(b)(1). In issuing its Determination Not to Initiate CCR, Commerce violated its statutory mandate that it "**shall** conduct a review." *Id*. (emphases added). This statutory language is unambiguous and, to the extent there is ambiguity, the U.S. Supreme Court recently confirmed that agencies are not entitled to deference when interpreting statutory provisions. *Loper Bright Enter. v. Raimondo*, 144 S. Ct. 2244 (June 28, 2024).

33.      In issuing its Determination Not to Initiate CCR, Commerce improperly declined to engage with the substance of Plaintiffs' CCR. Plaintiffs provided numerous facts establishing that the requested scope exclusion was administrable. Commerce was legally required to have initiated the CCR in order to evaluate the substantial evidence provided by Plaintiffs.

34.      In issuing its Determination Not to Initiate CCR based on Ecker's opposition, Commerce improperly declined to request more of Ecker beyond providing a certification to accompany its opposition. Plaintiffs cast sufficient doubt on the information contained in Ecker's opposition. Commerce was legally required to have initiated the CCR to evaluate Ecker's opposition and the propriety of excluding 100% polyester print canvas or all print canvas, and to create a full record in order to make a substantive decision on Plaintiffs' request.

35.      Commerce's Determination Not to Initiate CCR is unsupported by substantial evidence, unreasonable, arbitrary, capricious, and otherwise not accordance with law. 5 U.S.C. § 706. There is no rational connection between the facts found and the choice made.

## COUNT TWO

36.    Paragraphs 1 to 35 are adopted and incorporated herein by reference.

37.    The Constitution's Due Process Clause provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

38.    The Federal Circuit has stated that "an importer may be entitled to procedural due process regarding the resolution of disputed facts involved in a case of foreign commerce when the importer faces a deprivation of 'life, liberty, or property' by the Federal Government." *NEC Corp. v. United States*, 151 F.3d 1361, 1370 (Fed. Cir. 1998).

39.    Plaintiffs face economic and competitive harm from the additional tariffs imposed by the ADD Order that were imposed without the benefit of due process. They have in violation of the Constitution been deprived of their property without due process of law.

40.    An importer participating in a changed circumstances review has a due process right to "notice and a meaningful opportunity to be heard." *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 761–62 (Fed. Cir. 2012) (quoting *LaChance v. Erickson*, 522 U.S. 262, 266 (1998)); see also U.S. Const. art. 5.

41.    When Commerce perfunctorily took Ecker's false assertions at face value and without considering the numerous facts presented by Plaintiffs, it turned the review into meaningless, futile exercise, in violation of due process requirements.

42.    In violation of the Constitution, Plaintiffs have been deprived of their property without due process of law.

## COUNT THREE

43.    Paragraphs 1 to 42 are adopted and incorporated herein by reference.

44.     The ADD Order, on its face, violates the Equal Protection Doctrine of the U.S. Constitution by impermissibly discriminating between similarly situated domestic importers and selectively imposing an additional burden only on certain of those importers who import 100% polyester print canvas from China.

45.     The equal protection of the laws of the United States is guaranteed by the Fifth Amendment's Due Process requirement, which prohibits the government from unjustifiably treating similarly situated persons differently. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954) ("[A]s this Court has recognized, discrimination may be so unjustifiable as to be violative of due process."). A classification that "neither burdens a fundamental right nor targets a suspect class" will be upheld "so long as it bears a rational relation to the some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631 (1996); *Armour v. City of Indianapolis*, 566 U.S. 673, 680 (2012) ([A] classification neither involving fundamental rights nor proceeding along suspect lines . . . cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." (citation omitted))

46.     Plaintiffs are in all relevant aspects similarly situated to U.S. importers who import 100% polyester print canvas from countries other than China and whose imports are subject to the 264.09% tariff set forth in the ADD Order. The ADD Order imposes a different, more burdensome treatment on U.S. importers of 100% polyester print canvas from China. With no material injury to domestic producers that do not exist, there is no legitimate governmental purpose achieved by differentiating between U.S. importers based solely on the country of origin of their 100% polyester print canvas imports and the exorbitant duty on imports from China entered by Plaintiffs and similarly situated U.S.

14

importers. There being no legitimate governmental purpose for this discriminatory treatment, the ADD Order violates the Equal Protection Doctrine and is unconstitutional.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court:

(a) Hold that Commerce's Determination Not to Initiate CCR is not in accordance with law, arbitrary, capricious, and unsupported by substantial record evidence with respect to the claims advanced in this Complaint;

(b) Remand the Determination Not to Initiate CCR to Commerce to initiate a CCR as requested by Plaintiffs, consistent with the opinion of this Court;

(c) Enter judgment in favor of Plaintiffs and declare the ADD Order on China unconstitutional, null and void;

(d) Enjoin Defendants from implementing or enforcing the ADD Order on China against Plaintiffs;

(e) Order CBP to refund Plaintiffs the difference between any tariffs collected by CBP on their imports of 100% polyester print canvas products pursuant to the ADD Order and the ad valorem tariff that would otherwise apply on these imports, refund any penalties, refund any interest; and

(f) provide such other and further relief as the Court deems just and proper.

Respectfully submitted,
/s/ Kyl J. Kirby
Kyl J. Kirby
**KYL J. KIRBY, ATTORNEY AND COUNSELOR AT LAW, P.C.**
1400 Lipscomb Street
Fort Worth, TX 76104
Tel: (214) 632-0841
Attorney for Plaintiffs LEXJET, LLC, ABAQA, LLC, and BRAND MANAGEMENT GROUP, LLC

Date: June 27, 2026