THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| LEXJET, LLC,<br>ABAQA, LLC, and<br>BRAND MANAGEMENT GROUP, LLC,<br><br>Plaintiffs,<br><br>v.<br>UNITED STATES,<br><br>Defendant. | ) | Court No. 26-cv-03150 |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR FOR JUDGMENT ON THE PLEADINGS**

Kyl J. Kirby
**KYL J. KIRBY, ATTORNEY AND COUNSELOR AT LAW, P.C.**
1400 Lipscomb Street
Fort Worth, TX 76104
Tel: (214) 632-0841
Attorney for Plaintiffs LEXJET, LLC, ABAQA, LLC, and BRAND MANAGEMENT GROUP, LLC

Date: November 13, 2026

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES …………………………………………………………….... ii

BACKGROUND ……………………………………………………………………….. 1

MOTION TO DISMISS LEGAL STANDARD ………………………………………... 1

PLAINTIFFS PROPERLY INVOKED THE CIT'S RESIDUAL JURISDICTION IN ORDER TO GAIN JUDICIAL REVIEW OF COMMERCE'S REFUSAL TO INITIATE THE CCR ……………………………………………………………………………….. 3

JUDGMENT ON THE PLEADINGS LEGAL STANDARD ……………………………. 5

PLAINTIFFS HAVE ESTABLISHED AN ENTITLEMENT TO RELIEF PURSUANT TO 19 C.F.R. § 351.222(G)(1) …………………………………………………………….... 7

PLAINTIFFS HAVE A COGNIZABLE DUE PROCESS CONSTITUTIONAL CLAIM …………………………………………………………………………………. 11

PLAINTIFFS HAVE A COGNIZABLE EQUAL PROTECTION CONSTITUTIONAL CLAIM …………………………………………………………………………….... 16

CONCLUSION …………………………………………………………...…… 19

## TABLE OF AUTHORITIES

**Cases**

*Allegheny Pittsburgh Coal Co. v. Cnty. Comm'n of Webster Cnty.*, 488 U.S. 336 (1989). 17

*Almond Bros. Lumber Co. v. United States*, 651 F.3d 1343 (Fed. Cir. 2011) …………..… 2

*American Ass'n of Exporters and Importers-Textile and Apparel Group v. U.S., 751 F.2d 1239 (Fed. Cir. 1985)* ……………………………………………………………….. 14

*AOC Int'l v. United States*, 17 CIT 1412 (1993) ……………………………………….. 3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ……………………………………………… 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ……………………………………………………………………………….. 6-7, 12

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002) ……………………………….... 6

*Calgon Carbon Corp. v. United States*, 145 F. Supp. 3d 1312 (CIT 2016) ………………. 2

*Canadian Lumber Trade Alliance v. U.S.*, 441 F.Supp.2d 1259 (Ct. Int'l Trade 2006) …. 18

*Consolidated Bearings Co. v. United States*, 348 F.3d 997 (Fed. Cir. 2003) …………….. 2

*Curtin v. United States*, 91 Fed. Cl. 683 (2010) ……………………………………... 6

*Duferco Steel, Inc. v. United States*, 403 F.Supp.2d 1281 (2005) ………………………… 5

*Goodluck India Limited v. United States*, 605 F. Supp. 3d 1343 (CIT 2022) …………….. 1

*Goodluck India Limited v. United States*, 670 F.Supp.3d 1353 (Ct. Int'l Trade 2023) ….. 15

*Green v. Mansour*, 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985) ………………... 17

*Greenfirst Forest Prods. Inc. v. United States*, 604 F. Supp. 3d 1368 (CIT 2022) ……….. 2

*Gulf States Tube Div. of Quanex Corp. v. United States*, 981 F. Supp. 630 (Ct. Int'l Trade 1997) ………………………………………………………………………………... 14

*Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289 (Fed. Cir. 2008) ………………… 2

*Hartford Fire Ins. Co. v. United States*, 772 F.3d 1281 (Fed. Cir. 2014) ………………… 6

*Hous. Shutters LLC v. United States*, 816 F.Supp.3d 1349 (Ct. Int'l Trade 2026) ………... 4

*Inspired Venture v. United States*, 2024 WL 4616192 (Oct. 30, 2024) ………………….... 1

*Int'l Custom Prods., Inc. v. United States*, 791 F.3d 1329 (Fed. Cir. 2015) ………… 12, 14

*Jia Farn Mfg. Co., Ltd. v. United States*, 817 F.Supp. 969 (1993) ……………………… 10

*Kellogg Brown & Root Servs., Inc. v. United States*, 728 F.3d 1348 (Fed. Cir. 2013) …… 6

*LaChance v. Erickson*, 522 U.S. 262, 118 S.Ct. 753, 139 L.Ed.2d 695 (1998) ……... 12, 15

*Laguna Hermosa Corp. v. United States*, 671 F.3d 1284 (Fed. Cir. 2012) ……………… 12

*Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)) ………….. 13, 15

*Mittal Canada, Inc. v. U.S.*, 461 F.Supp.2d 1325 (Ct. Int'l Trade 2006) …………………. 9

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) ……………………………………………………………………………… 13

*National Nail Corp. v. United States*, 335 F. Supp. 3d 1321 (CIT 2018) ………………… 2

*NEC Corp. v. United States*, 151 F.3d 1361 (Fed. Cir. 1998) …………………………… 12

*Nereida Trading Co. v. United States*, 248, 683 F. Supp. 2d 1348 (2010) ………….. 12, 14

*Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356 (Fed. Cir. 1992) ……………. 2

*Or. Steel Mills, Inc. v. United States*, 862 F.2d 1541 (Fed.Cir.1988) …………………… 10

*Oy v. United States*, 61 F.3d 866, 875 (Fed. Cir. 1995) ……………………………….... 9

*Pat Huval Rest. & Oyster Bar, Inc. v. United States*, 547 F. Supp. 2d 1352 (2008) ……... 6

*PSC VSMPAvisma Corp. v. United States*, 688 F.3d 751 (Fed. Cir. 2012) …………. 12, 15

*Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952) ……………………………………………………………………………… 17

*Romer v. Evans*, 517 U.S. 620 (1996) …………………………………………………… 16

*Royal Brush Mfg., Inc. v. United States*, 483 F. Supp. 3d 1294 (2020) ……………... 13, 15

*Royal Brush Mfg., Inc. v. United States*, 75 F.4th 1250 (Fed. Cir. 2023) ……………….. 15

*Schick v. United States*, 533 F. Supp. 2d 1276 (2007) …………………………………… 6

*Shinyei Corp. of America v. U.S.*, 355 F.3d 1297 (Fed. Cir. 2004) ……………………… 18

*Tokyo Kikai Seisakusho, Ltd. v. U.S.*, 473 F.Supp.2d 1349 (Ct. Int'l Trade 2007) ……… 11

*Transcom, Inc. v. United States*, 121 F. Supp. 2d 690 (2000) ……………………… 12, 13

*Transcom, Inc. v. United States*, 294 F.3d 1371 (Fed. Cir. 2002) ……………………….. 15

*Trustees in Bankr. of N.A. Rubber Thread v. U.S.*, 30 CIT 1537 (2006) …………………. 9

*Trustees in Bankr. of N.A. Rubber Thread v. U.S.*, 593 F.3d 1346 (Fed. Cir. 2010) ……... 4

*Trustees in Bankr. of N.A. Rubber Thread v. U.S.*, 464 F.Supp.2d 1350 (Ct. Int'l Trade 2006) ………………………………………………………………………… 3, 5

*U.S. Auto Parts Network, Inc. v. United States*, 319 F. Supp. 3d 1303 (2018) ………….. 12

*Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) …….. 17

**Statutes**

11 U.S.C. § 1146 …………………………………………………………………… 17

11 U.S.C. § 505……………………………………………………………………... 17

19 C.F.R. § 351.213 ………………………………………………………………… 4

19 C.F.R. § 351.213(b)(1) …………………………………………………………… 5

19 C.F.R. § 351.213(e)(1) …………………………………………………………… 5

19 C.F.R. § 351.222 ………………………………………………………………... 11

19 C.F.R. § 351.222(G)(1) ……………………………………………………… 1, 7, 11

19 C.F.R. § 351.222(G)(1)(i) ……………………………………………………... 7

19 C.F.R. § 351.222(G)(1)(ii) …………………………………………………… 7, 9, 10

19 U.S.C. § 1516a (f)(10) ………………………………………………………... 17

19 U.S.C. § 1675(b) ………………………………………………………………... 10

19 U.S.C. § 1675(b)(1) (2000) ……………………………………………………... 10

26 U.S.C. § 7428 .......................................................................................... 17

28 U.S.C. § 1581 ....................................................................................... 2, 18

28 U.S.C. § 1581(i) ......................................................................................... 2-4

28 U.S.C. § 1582 .......................................................................................... 18

28 U.S.C. § 2201(a) ....................................................................................... 17

28 U.S.C. § 2202 .......................................................................................... 17

28 U.S.C. § 2643 .......................................................................................... 18

28 U.S.C. § 2643(a)(1) .................................................................................... 18

28 U.S.C. § 2643(c)(1) .................................................................................... 18

516A(f)(10) of the Tariff Act of 1930 ............................................................. 17

751(a)(1) of the Tariff Act of 1930 ................................................................... 4

771(9)(B) of the Tariff Act of 1930 ................................................................... 4

**Other Authorities**

*Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To Request Administrative Review and Join Annual Inquiry Service List; Note Regarding Format of Review Requests*, 91 FR 32937 (Dep't Commerce Jun. 2, 2026) ….. 5

*Automatic liquidation instruction for Artist Canvas from The People's Republic of China for the period 06/01 /2025 through 05/31/2026 (A-570-899)* (Dep't Commerce Sep. 16, 2026) ................................................................................................................ 5

*Carbon and Certain Alloy Steel Wire Rod from Ukraine*, 70 Fed.Reg. 21396 (Dep't Commerce Apr. 26, 2005) ........................................................................................ 10

*Issues and Decision Memorandum for the Reconsideration of Sunset Review of the Antidumping Duty Order on Large Newspaper Printing Presses and Components Thereof, Whether Assembled or Unassembled, from Japan; Final Results, A-588-837* (Dep't Commerce Aug. 14, 2025) ...................................................................................... 11

Fed. R. Civ. P. 201 .............................................................................................. 2

Fed. R. Civ. P. 8(a)(2) .......................................................................................... 6

*Notice of Antidumping Duty Order: Certain Artist Canvas from the People's Republic of China*, 71 FR 31154 (June 1, 2006) …………………………………………………………. 3

*Stainless Steel Sheet and Strip in Coils from the Republic of Korea*, 71 Fed.Reg. 37906 (Dep't Commerce July 3, 2006) …………………………………………………………….. 10

USCIT R. 12(c) …………………………………………………………………………… 1

USCIT R. 57 ……………………………………………………………………………... 17

USCIT R. 8(a)(2) ……………………………………………………………………..…… 6

USCIT R. 12(b)(1) ………………………………………………………………………... 1

USCIT R. 12(b)(6) ………………………………………………………………………... 5

USCIT R. 12(c) …………………………………………………………………………… 5

USCIT R. 12(c) …………………………………………………………………………… 6

USCIT R. 8(a) …………………………………………………………………………….. 2

USCIT R. 8(a)(1) ………………………………………………………………………….. 1

Plaintiffs Lexjet, LLC, Abaqa, LLC, and Brand Management Group, LLC ("Lexjet" or "Plaintiffs") hereby respond to the amended Motion to Dismiss or for Judgment on the Pleadings filed by Defendant, United States on October 13, 2026, ECF No. 23 ("Def. Br."). For the reasons set forth below, this Court has jurisdiction over Plaintiffs' challenge to the U.S. Department of Commerce's ("Commerce") refusal to initiate a changed circumstances review ("CCR") to exclude 100% polyester print canvas or all print canvas from the scope of the antidumping duty ("ADD") order on artist canvas from the People's Republic of China ("ADD Order"). Furthermore, Plaintiffs have established they are entitled to relief under 19 C.F.R. § 351.222(G)(1). Plaintiffs have also successfully stated constitutional Due Process and Equal Protection claims. For all claims, Plaintiffs have exceeded the factual standards to survive the Rule 12(b)(1) and (c) motions. Respectfully, this Court should accordingly deny Defendant's Motion to Dismiss and should not grant Defendant's Motion for Judgment on the Pleadings. Instead, this case should proceed in consideration of the merits of Plaintiff's appeal.

## BACKGROUND

Plaintiffs refer the Court to Plaintiffs' Complaint for a recitation of the facts in the Background and Statement of Facts Section. Complaint (Jun. 27, 2026), ECF No. 2 at 5.

## MOTION TO DISMISS LEGAL STANDARD

"Prevailing on a motion to dismiss based on a jurisdictional dispute presents a high bar." *Inspired Venture v. United States*, 2024 WL 4616192, *3 (Oct. 30, 2024) "If the party makes an allegation of fact that sufficiently invokes the subject matter jurisdiction of the Court of International Trade, then the party has satisfied the liberal pleading requirements of CIT Rule 8(a)(1), and a motion to dismiss is improper." *Goodluck India Limited*

*v. United States*, 605 F. Supp. 3d 1343, 1346 n.2 (CIT 2022) (citing CIT Rule 8(a)). The U.S. Court of Appeals for the Federal Circuit ("CAFC") repeatedly "has noted that in enacting 28 U.S.C. § 1581(i), Congress granted the CIT broad residual jurisdiction over matters relating to imports." *Almond Bros. Lumber Co. v. United States*, 651 F.3d 1343, 1351 (Fed. Cir. 2011) (emphasis added). The CAFC refers to 28 U.S.C. § 1581(i) as "a Congressional fail-safe device" and a "catch all provision." *Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1292 (Fed. Cir. 2008); *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 359 (Fed. Cir. 1992). It "supplies jurisdiction only for instances when no other subsection of {28 U.S.C. § 1581} 'is or could have been available,' unless the other subsection provided no more than a manifestly inadequate remedy." *Consolidated Bearings Co. v. United States*, 348 F.3d 997, 1002 (Fed. Cir. 2003) (quoting *Norcal/Crosetti*, 963 F.2d at 359). This Court has previously used the 28 U.S.C. § 1581(i) statutory grant of residual jurisdiction to review Commerce's refusal to initiate a CCR. *Greenfirst Forest Prods. Inc. v. United States*, 604 F. Supp. 3d 1368, 1370 (CIT 2022). Where "the Government challenges the existence of jurisdiction, . . . the court may consider extrinsic evidence." *National Nail Corp. v. United States*, 335 F. Supp. 3d 1321, 1325 (CIT 2018). This Court can and should take judicial notice of documents posted on Commerce's ACCESS website. *See, e.g.*, *Calgon Carbon Corp. v. United States*, 145 F. Supp. 3d 1312, 1327 (CIT 2016). Such AD/CVD proceeding submissions, locatable on ACCESS using each document's barcode, [ ] are "generally known" and their filing "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FRCP Rule 201.

## PLAINTIFFS PROPERLY INVOKED THE CIT'S RESIDUAL JURISDICTION IN ORDER TO GAIN JUDICIAL REVIEW OF COMMERCE'S REFUSAL TO INITIATE THE CCR

Defendant contends this Court does not have jurisdiction pursuant to 28 U.S.C. § 1581(i) because Plaintiffs' "could request the same relief — revocation of the AD order — by either: (1) challenging the existence of a U.S. industry with the International Trade Commission (ITC); or (2) raising the issue of Ecker and Tara's domestic production of 100% polyester print canvas in the next annual review." Def. Br. at 9. Defendant misplaces reliance on *AOC Int'l v. United States*, 17 CIT 1412 (1993) in support of its claims. *Id*. at 12. Defendant fails to point out to the Court a factual distinction between the present case and that of *AOC*. Here, Plaintiffs requested retroactive relief to the date[1] of the ADD Order. "Plaintiffs have clearly met the burden of persuasion with respect to whether there are changed circumstances sufficient to warrant revocation of the ADD order back to the date of the antidumping duty ADD Order, i.e., June 1, 2006." Complaint (Jun. 27, 2026), ECF No. 2, ¶ 27. "Lexjet requests that Commerce not only amend the scope language, but clarify that the change is retroactive to the date that the antidumping duty *Order* was published, i.e., June 1, 2006." Def.' Br. Ex. D at *3. "ON AN EXPEDITED BASIS, COMMERCE SHOULD RETROACTIVELY AMEND THE ORDERS CONSISTENT WITH LEXJET'S PROPOSAL". *Id*. at *34. "Unlike *AOC*, here there is no possibility of prospective relief available for plaintiffs." *Trustees of N. Amer. Rubber Thread v. U.S.*, 464 F.Supp.2d 1350, 1356 (Ct. Int'l Trade 2006) "[O]nly Commerce is vested with the authority to determine the effective date for revocation of the Order based on changed

[1] *See Notice of Antidumping Duty Order: Certain Artist Canvas from the People's Republic of China*, 71 FR 31154 (June 1, 2006).

circumstances." *Id*. "Commerce's exclusive authority includes establishing the effective date of revocation." *Id*. at 1364. This interpretation was upheld by the U.S. Court of Appeals for the Federal Circuit in ("CAFC") *Trustees in Bankr. of N.A. Rubber Thread v. U.S.,* 593 F.3d 1346 (Fed. Cir. 2010). *See also Hous. Shutters LLC v. United States*, 816 F.Supp.3d 1349, 1353 (Ct. Int'l Trade 2026) (the Court held jurisdiction pursuant to 28 U.S.C. § 1581(i) was proper where the plaintiff "sought to retroactively eliminate AD"). Importantly, in issuing an order to deny intervention in the instant case, the Court made reference to both the CAFC *Trustees in Bankr. of N.A. Rubber Thread* case as well as the *Hous. Shutters LLC* case in stating that, "In similar cases challenging Commerce's decisions not to initiate CCRs, the court and the United States Court of Appeals for the Federal Circuit have found jurisdiction pursuant to 28 U.S.C. § 1581(i*)*." Order denying Partial Consent Motion of Proposed Defendant-Intervenor Ecker Textiles, LLC, on September 18, 2026, ECF No. 19. Thus, Defendant's presumption that Plaintiffs have an alternative changed circumstances remedy with the U.S. International Trade Commission is false.

Moreover, a future annual review with Commerce as posited by Defendant is also manifestly inadequate. With an annual review, Commerce does not have the authority under 19 C.F.R. § 351.213 to establish the effective date of revocation back to the date when the ADD order was published in 2006.

> Request for administrative review.
>
> Each year during the anniversary month of the publication of an antidumping or countervailing duty order, a domestic interested party or an interested party described in section 771(9)(B) of the Act (foreign government) may request in writing that the Secretary conduct an administrative review under section 751(a)(1) of the Act of specified individual exporters or producers covered by an order (except for a countervailing duty order in which the investigation or prior

> administrative review was conducted on an aggregate basis), if the requesting person states why the person desires the Secretary to review those particular exporters or producers.
>
> 19 C.F.R. § 351.213(b)(1)
>
> Period of review —
>
> (i) Antidumping proceedings. (i) Except as provided in paragraph (e)(1)(ii) of this section, an administrative review under this section normally will cover, as appropriate, entries, exports, or sales of the subject merchandise during the 12 months immediately preceding the most recent anniversary month.
>
> (ii) For requests received during the first anniversary month after publication of an order or suspension of investigation, an administrative review under this section will cover, as appropriate, entries, exports, or sales during the period from the date of suspension of liquidation under this part or suspension of investigation to the end of the month immediately preceding the first anniversary month.
>
> 19 C.F.R. § 351.213(e)(1).

Thus, the next period of review would be only for 6/1/26-5/31/27, as recently demonstrated by Commerce. *Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To Request Administrative Review and Join Annual Inquiry Service List; Note Regarding Format of Review Requests,* 91 FR 32937 (Dep't Commerce Jun. 2, 2026). *Automatic liquidation instruction for Artist Canvas from The People's Republic of China for the period 06/01 /2025 through 05/31/2026 (A-570-899)* (Dep't Commerce Sep. 16, 2026). Exhibit 1. Indeed, Plaintiffs "are seeking safe harbor in what indeed appears to be their 'port of last resort.' " *Trustees of N. Amer. Rubber Thread v. U.S.*, 464 F.Supp.2d 1350, 1356 (Ct. Int'l Trade 2006) (quoting *Duferco Steel, Inc. v. United States*, 403 F.Supp.2d 1281, 1285 (2005)).

**JUDGMENT ON THE PLEADINGS LEGAL STANDARD**

The "same legal standard is applied to evaluate a Rule 12(c) motion for judgment on the pleadings as is applied for a Rule 12(b)(6) motion to dismiss for failure to state a

claim upon which relief can be granted." *Curtin v. United States*, 91 Fed. Cl. 683, 687 n.1 (2010). A complaint must set forth a short and plain statement of the claim showing that the complainant is entitled to relief. CIT R. 8(a)(2); *cf.* Fed. R. Civ. P. 8(a)(2). A motion to dismiss “tests the legal sufficiency of a complaint,” rather than challenge the substance of the claim as would a motion for summary judgment. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). “To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to ‘state a claim to relief that is plausible on its face.’” *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). “A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” *Id.* (citing *Twombly*, 550 U.S. at 556). Although Defendant has not disputed the facts alleged by Plaintiffs, it is well-established that “[i]n deciding a motion to dismiss, the court must accept well pleaded factual allegations as true and must draw all reasonable inferences in favor of the claimant.” *Hartford Fire Ins. Co. v. United States*, 772 F.3d 1281, 1284 (Fed. Cir. 2014) (quoting *Kellogg Brown & Root Servs., Inc. v. United States*, 728 F.3d 1348, 1365 (Fed. Cir. 2013)).

For Defendants to prevail on their Rule 12(c) motion, the Court must conclude that the “plaintiff’s factual allegations are not ‘enough to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).” *Pat Huval Rest. & Oyster Bar, Inc. v. United States*, 32 CIT 232, 236, 547 F. Supp. 2d 1352, 1357 (2008) (quoting *Twombly*, 550 U.S. at 555), *aff’d*, 785 F.3d 638 (Fed. Cir. 2015); AFDOCS/19875403.10 *Schick v. United States*, 31 CIT 2017, 2020, 533 F. Supp. 2d 1276, 1281 (2007). As the Supreme Court stated in *Twombly*, “[O]nce a

claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563.

**PLAINTIFFS HAVE ESTABLISHED AN ENTITLEMENT TO RELIEF PURSUANT TO 19 C.F.R. § 351.222(G)(1)**

At the outset, Commerce was required to consider the CCR under both 19 C.F.R. § 351.222(G)(1)(i) and 19 C.F.R. § 351.222(G)(1)(ii). Defendant did not discuss 19 C.F.R. § 351.222(G)(1)(ii). Defendant's primary contention is that "plaintiffs fail to provide any plausible basis to find Commerce's determination irrational" and that the CCR "contains no statements from the domestic industry expressing a lack of interest" in the AD Order and the complaint asserts none." Def. Br. at 14. To the contrary, Plaintiffs argued in both the CCR and the Complaint that numerous actions and inactions that amounted to Tara and Ecker expressing a lack of interest. In the CCR, Plaintiffs stated, "As outlined below, the petitioner Tara Materials Inc ("Tara"), and its subsequent purchaser, Ecker Textiles LLC ("Ecker"), have had and have a lack of interest in producing 100% polyester print canvas." Br. Ex. D at *2. For example, in its petition to the United States International Trade Commission ("ITC") and Commerce, Tara stated, "While there may be minor variations in size, material composition (all cotton or cotton/polyester blend fabric) and format (Such as prestretched or in panel form), these do not provide clear dividing lines among articles". There was no mention of 100% polyester print canvas. Def. Br. Ex. D at *4. When asked by the ITC to produce print canvas prices, Tara provided Polyflax, both polyester/cotton products posed as 100% polyester. Def. Br. Ex. D at *6. In subsequent actions, Tara did not inform the agencies that it did not make 100% polyester print canvas. Def. Br. Ex. D at *10. Importantly, "Tara executed a letter stating that Lexjet's 100% polyester Water Resistant Satin Cloth was out of scope of the *Order*." Administrative Record (Jun. 27,

2026), ECF No. 2, Ex. 25. Subsequently Ecker has been unable to provide proof production for any 100% polyester print canvas. Def. Br. Ex. D at *27. These are only a few examples of Tara and Ecker expressing their lack of interest in producing 100% polyester print canvas. From the Complaint, Defendant attempts to use the quote, "Ecker accounts for mostly all of print canvas domestic production". Def. Br. at 14. However, Defendant fails to recognize Plaintiffs' argument there is a distinction between 100% polyester print canvas and other print canvases, and the Plaintiffs have argued that neither Tara nor Ecker have had or have an interest in producing 100% polyester print canvas. If Ecker truly accounts for mostly all of the print canvas production and it has expressed a lack of interest from its fraudulent omissions and misstatements, when coupled with a lack of evidence from Ecker demonstrating any production, it follows that Commerce erred in not initiating the CCR. Defendant also attempts to twist the statement, "acknowledging that Ecker has stated 'it was interested in keeping {100% polyester print canvas} covered by the {AD Order}' ". *Id.* Plaintiffs did not acknowledge Ecker's statement. Instead, Plaintiffs asserted that "Ecker on April 29, 2026, filed an opposition to Plaintiffs' CCR Request, falsely claiming it was interested in keeping those products covered by the ADD Order and that Plaintiffs' request was deficient. Ecker provided no evidence that Tara or it actually made or makes 100% polyester print canvas." Complaint ¶ 28.

Defendant misses the mark in asserting that the claims to do not elevate to "the realm of possibility" and there were "changed circumstances sufficient to warrant a review exist". Def. Br. at 15. As further explained above and below, the Complaint record is replete with facts sufficient to state a claim to relief that is plausible on its face that rises above the speculative level. Commerce indeed was legally required to have initiated the

CCR in order to evaluate the substantial evidence. Plaintiffs do assert a plausible basis to overturn Commerce's determination to not initiate a CCR. Although this appears to be a case of first impression, the CCR request and Complaint clearly show that Tara and Ecker expressed a lack of interest in 100% polyester print canvas pursuant to 19 C.F.R. § 351.222(G)(1)(i). *Oy v. United States*, 61 F.3d 866, 875 (Fed. Cir. 1995), *Trs. in Bankr. of N. Am. Rubber Thread Co. v. United States*, 30 CIT 1537, 1542 n.8 (2006). Certainly, Commerce in determining that the "misstatements, omissions, and false statements" were irrelevant, Commerce erred in its decision. Def. Br. at 16. Commerce also erred when it discounted other, numerous facts that demonstrated an expressed lack of interest. *Id*. Instead, Defendant states, "plaintiffs do not point to any authority that requires Ecker and Tara to produce 100% polyester print canvas before stating an interest in maintaining the scope of the AD Order." *Id*. Antidumping rules are to protect against material injury to domestic producers. It is illogical the rules were also meant to protect domestic production that simply does not exist. Nothing in the antidumping rules prevents Commerce from making a material injury determination. As shown by past actions, Commerce could have referred the material injury matter to the ITC. Plaintiffs' assertions do not fail to establish that they have a plausible claim for relief. *Id*.

The "misstatements, omissions, and false statements" during administrative proceedings are among the reasons also to initiate a CCR pursuant to 19 C.F.R. § 351.222(G)(1)(ii). Complaint ¶ 29. *See also* Complaint ¶ 27. "Commerce emphasizes the broad range of matters to which changed circumstances reviews may relate." *Mittal Canada, Inc. v. U.S.*, 461 F.Supp.2d 1325, 1332 (Ct. Int'l Trade 2006). Indeed, "Commerce may initiate a changed circumstances review to examine several factors wholly unrelated

to assessment rates. The scope of Commerce's authority to initiate changed circumstances reviews under 19 U.S.C. § 1675(b) is delimited only by the general requirement that there be 'changed circumstances sufficient to warrant a review' of the antidumping order. *See* 19 U.S.C. § 1675(b)(1) (2000). Commerce's discretion is broad, and the range of matters subject to changed circumstances reviews is wide. *See*, e.g., O*r. Steel Mills, Inc. v. United States*, 862 F.2d 1541, 1545 (Fed.Cir.1988) (review of amount of domestic industry support of antidumping duty order); *Jia Farn Mfg. Co., Ltd. v. United States*, 17 CIT 187, 193, 817 F.Supp. 969, 974 (1993) (review of importer's resales of other producer's merchandise); *Stainless Steel Sheet and Strip in Coils from the Republic of Korea*, 71 Fed.Reg. 37906 (Dep't Commerce July 3, 2006) (final results of changed circumstances review) (successor-in-interest review); *Carbon and Certain Alloy Steel Wire Rod from Ukraine*, 70 Fed.Reg. 21396 (Dep't Commerce Apr. 26, 2005) (notice of initiation of changed circumstances review) (reviewing nonmarket economy status)." *Id*. at 1339.

In discussing its reasoning not to initiate a CCR pursuant to 19 C.F.R. § 351.222(G)(1)(ii), Commerce summarily stated, "Commerce determines whether dumping occurs by investigating foreign companies. [ ] Lexjet does not explain how any statements or omissions on the types of products available from domestic production would affect Commerce's determination that was based on the investigation of foreign companies. Further, we find that the conduct of ITC proceedings is outside of Commerce's purview." Def. Br. Ex. A at 3. However, antidumping rules and caselaw demonstrate that Commerce's Determination Not to Initiate CCR is unsupported by substantial evidence, unreasonable, arbitrary, capricious, and otherwise not accordance with law. 5

U.S.C. § 706. There is no rational connection between the facts found and the choice made. *Tokyo Kikai Seisakusho, Ltd. v. U.S.*, 473 F.Supp.2d 1349, 1364 n. 11 (Ct. Int'l Trade 2007) ("declaring that reconsideration of sunset review will allow Commerce to analyze nature of material injury" caused by fraud). Commerce can and does refer material injury determinations to the ITC when necessary in 19 C.F.R. § 351.222 actions. *Issues and Decision Memorandum for the Reconsideration of Sunset Review of the Antidumping Duty Order on Large Newspaper Printing Presses and Components Thereof, Whether Assembled or Unassembled, from Japan; Final Results*, A-588-837 (Dep't Commerce Aug. 14, 2025) ("defer[al] to the ITC with respect to its authority to analyze the likelihood of continuation or recurrence of material injury on the domestic [industry]"). Exhibit 3 at 12. *Id*. at 11 (evidence of fraud warrant reconsideration of the sunset review so that the ITC may further analyze the issue of material injury). *Id*. at 10 (domestic production evidence analyzed as part of a 19 C.F.R. § 351.222 sunset reviewed action).

The record is replete with the numerous facts that warrant an initiation of a CCR. These missteps resulted in erring in its decision. Plaintiffs have clearly stated a claim to relief that is plausible on its face rising above speculation, for which Plaintiffs should be allowed to argue the merits of the 19 C.F.R. § 351.222(G)(1) claims.

## PLAINTIFFS HAVE A COGNIZABLE DUE PROCESS CONSTITUTIONAL CLAIM

Defendant contends that, "At best, however, these claims are derivative of plaintiffs' request for a CCR by Commerce and have no independent merit." Def. Br. at 17. Defendant goes on to allege, "There was no advance review and no showing that any form of due process or procedures were followed as prescribed under the statute. Plaintiffs' recharacterization of their principal claim as constitutional in nature does not create a

separate 'legally cognizable right of action' or 'elevate [their] claim for relief to the realm of plausibility.' *Twombly*, 550 U.S. at 555; *Laguna Hermosa*, 671 F.3d at 1288." *Id*.

"The Fifth Amendment prohibits the deprivation of life, liberty, or property without due process of law." *U.S. Auto Parts Network, Inc. v. United States*, 42 CIT ——, ——, 319 F. Supp. 3d 1303, 1310 (2018) (citing U.S. Const. amend. V). Thus, "[t]he first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty." *Int'l Custom Prods., Inc. v. United States*, 791 F.3d 1329, 1337 (Fed. Cir. 2015) (citation omitted). While "engaging in foreign commerce is not a fundamental right protected by notions of substantive due process," *NEC Corp. v. United States*, 151 F.3d 1361, 1369 (Fed. Cir. 1998), an importer participating in an administrative proceeding has a procedural due process right to 'notice and a meaningful opportunity to be heard,' *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 761–62 (Fed. Cir. 2012) [hereinafter Avisma ] (quoting *LaChance v. Erickson*, 522 U.S. 262, 266, 118 S.Ct. 753, 139 L.Ed.2d 695 (1998) );19 see also *Nereida Trading Co. v. United States*, 34 C.I.T. 241, 248, 683 F. Supp. 2d 1348, 1355 (2010) (assuming that the plaintiff had 'a protected interest in the proper assessment of tariffs on goods already imported' and further examining 'what process is due') (citation omitted); *Transcom, Inc. v. United States*, 24 C.I.T. 1253, 1271, 121 F. Supp. 2d 690, 707 (2000) ('It is impossible to comprehend how an importer's lack of a vested right to import merchandise in the future negates the obligation to provide the importer with notice prior to imposing an antidumping duty for the merchandise already imported.'). In general, 'notice [must be] reasonably calculated, under all the circumstances, to appri[s]e interested [ ] parties of the pendency of the action and afford them an opportunity to present their objections.'

*Transcom*, 24 C.I.T. at 1272, 121 F. Supp. 2d at 708 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). Such opportunity must occur 'at a meaningful time and in a meaningful manner.' *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976))." *Royal Brush Mfg., Inc. v. United States*, 483 F.Supp.3d 1294, 1305 (Ct. Int'l Trade 2020).

Defendant's assertion that Plaintiffs do not have an independent cause of action is simply incorrect. In *Royal Brush*, this Court found an independent Due Process cause of action where "CBP failed to ensure that confidential filings were accompanied by the requisite public summaries." *Id*. "CBP's compliance with its regulation concerning public summarization of confidential information is relevant to assessing Royal Brush's claim that CBP denied Royal Brush a meaningful opportunity to participate in the administrative proceeding." *Id*. at 1307. In *Royal Brush* the plaintiff complained that "CBP's conclusion is based on a flawed logic and is therefore irrational" and that "[a] mere possibility does not constitute substantial evidence". Reply Brief of Plaintiff at 12, *Royal Brush*. Here too, Plaintiffs are complaining that Commerce's determination is unsupported by substantial, unreasonable with no rational connection between the facts found and the choice made. Complaint ¶ 35. Like in *Royal Bush*, the Due Process allegation is not based on an agency decision but is based on procedural Due Process that should be afforded. The plaintiff in Royal Brush claimed that "CBP violated its own regulations and deprived Royal Brush of due process through a series of errors that compounded each other." Reply Brief of Plaintiff at 1, *Royal Brush*. Here, Plaintiffs have similarly stated that, "When Commerce perfunctorily took Ecker's false assertions at face value and without considering the numerous facts presented by Plaintiffs, it turned the review into meaningless, futile

exercise, in violation of due process requirements." Complaint ¶ 41. Indeed, in its decision, Commerce tellingly stated, "While Lexjet disagrees with Ecker Textiles on whether Ecker Textiles actually produces the requested merchandise,[ ] this disagreement is not material to our analysis. … We disagree that Lexjet's allegations warrant a CCR to partially revoke the *Order* with respect to requested merchandise. First, Commerce determines whether dumping occurs by investigating foreign companies.[ ] Lexjet does not explain how any statements or omissions on the types of products available from domestic production would affect Commerce's determination that was based on the investigation of foreign companies. Further, we find that the conduct of ITC proceedings is outside of Commerce's purview." Def. Br. Ex. A at *3. "When Commerce perfunctorily took Ecker's false assertions at face value and without considering the numerous facts presented by Plaintiffs, it turned the review into meaningless, futile exercise, in violation of due process requirements." Complaint ¶ 41. Clearly there are two separate, legitimate, causes of action.

Defendant is trying to lead this Court to believe that the Plaintiffs have no Due Process rights in relying on *Int'l Custom Prods., Inc. v. United States*, 791 F.3d 1329 (Fed. Cir. 2015) and *Gulf States Tube Div. of Quanex Corp. v. United States*, 981 F. Supp. 630, 652 (Ct. Int'l Trade 1997). Def. Br. at 17. However, "these holdings do 'not preclude a protected interest in the proper assessment of tariffs on goods already imported.' *Nereida Trading Co., Inc. v. United States*, 34 C.I.T. 241, 248, 683 F. Supp. 2d 1348, 1355 (2010); *cf. Am. Ass'n of Exporters*, 751 F.2d at 1250 (finding no protected interest where the agency 'has not taken from [importers] any merchandise which they have already purchased' but 'has merely limited the amounts which the importers can purchase in the future'). … "[T]he right to due process does not depend on whether statutes and

regulations provide what is required by the [C]onstitution." *Royal Brush Mfg., Inc. v. United States*, 75 F.4th 1250, 1260 [ ] (Fed. Cir. 2023). For instance, participants in antidumping duty order proceedings are entitled to the ‘due process right . . . ' to notice and a meaningful opportunity to be heard,’ ' *PSC VSMPAvisma Corp. v. United States*, 688 F.3d 751, 761-62 (Fed. Cir. 2012) (quoting *LaChance v. Erickson*, 522 U.S. 262, 266, 118 S.Ct. 753, 139 L.Ed.2d 695 (1998)), which may extend beyond Commerce's statutory and regulatory obligations, *cf. Transcom, Inc. v. United States*, 24 C.I.T. 1253, 1272, 121 F. Supp. 2d 690, 708 (2000), aff'd, 294 F.3d 1371 (Fed. Cir. 2002) (ultimately finding that the regulation afforded sufficient process). … And the opportunity to be heard must be afforded ‘at a meaningful time and in a meaningful manner." *Royal Brush Mfg., Inc. v. United States*, 44 CIT —, —, 483 F. Supp. 3d 1294, 1306 (2020) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). *Goodluck India Ltd. v. United States*, 670 F.Supp.3d 1353, 1378 (Ct. Int'l Trade 2023). While Defendant attempts to rely on *PSC VSMPAvisma Corp.*, Defendant offered up no argument as to how Commerce’s proceeding was meaningful and only focused on the notice aspect. Simply put, the proceeding was nothing but an empty formality. Commerce refused to exercise its broad discretion to review the matter. These missteps resulted in violating Plaintiffs’ Due Process rights.

As recognized by Defendant, Plaintiffs have a cognizable protected interest based on action brought by the United States to recover lawful duties, taxes, fees and penalties for previously entered merchandise. Def. Br. at 4. Plaintiffs put forth numerous facts demonstrating that Commerce failed to provide a meaningful opportunity to be heard. Plaintiffs have clearly stated a claim to relief that is plausible on its face rising above

speculation, for which Plaintiffs should be allowed to argue the merits of the Due Process claim.

## PLAINTIFFS HAVE A COGNIZABLE EQUAL PROTECTION CONSTITUTIONAL CLAIM

As above, Defendant also describes Plaintiff's Equal Protection claim as, "At best, however, these claims are derivative of plaintiffs' request for a CCR by Commerce and have no independent merit." Def. Br. at 17. At the outset, the record is clear Plaintiffs are requesting two distinct reliefs. Count One concerns attacking the CCR decision by Commerce and Plaintiffs' prayed that the Court hold that Commerce's determination is not in accordance with the law. Court three concerns attacking the scope of the ADD case and Plaintiffs prayed that the Court hold the ADD case to be unconstitutional, null and void.

Defendant next argues that, "And plaintiffs premise their 'equal protection' challenge on the allegation that there is 'no material injury to domestic producers that do not exist.' Compl. ¶ 46 (count III). But these arguments only restate the basis of plaintiffs' request for a CCR and the basis for their appeal to this Court, *i.e.*, that 'Commerce improperly declined to engage with the substance of Plaintiffs' CCR.' Compl. ¶ 33 (count I)." Def. Br. at 17. If there is no material injury, there is no rational, legitimate basis to treat similarly situated persons differently. "[L]aws singling out a certain class of citizens for disfavored legal status or general hardships are rare. A law declaring that in general it shall be more difficult for one group of citizens than for all others … is itself a denial of equal protection of the laws in the most literal sense. *Romer v. Evans*, 517 U.S. 620, 633 (1996). "The equal protection clause … protects the individual from … action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the

same class." *Allegheny Pittsburgh Coal Co. v. Cnty. Comm'n of Webster Cnty.*, 488 U.S. 336, 345 (1989).

Defendant goes on to state, "But plaintiffs fail to explain how their equal protection challenge is within the scope of Commerce's determination on review — *i.e.*, Commerce's decision not to initiate a CCR." It is well-known that the Court has discretion in fashioning remedies where it has jurisdiction. "In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986 [26 U.S.C. § 7428], a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930 [19 U.S.C. § 1516a (f)(10)]),2 as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. 28 U.S.C. § 2201(a) (emphasis added). *See also* USCIT R. 57; 28 U.S.C. § 2202. The Supreme Court has explained that '[w]hile the courts should not be reluctant' to grant relief in appropriate cases, *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 243, 73 S.Ct. 236, 97 L.Ed. 291 (1952), the declaratory judgment statute 'is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant,' *id*. at 241, 73 S.Ct. 236. *See also Green v. Mansour*, 474 U.S. 64, 72, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) ("By the Declaratory Judgment Act, Congress

sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants.')." *Canadian Lumber Trade Alliance v. U.S.*, 441 F.Supp.2d 1259, 1262 (Ct. Int'l Trade 2006). Here, Plaintiffs asked for a declaratory judgment to declare the ADD Order as unconstitutional, null and void. Complaint at 15. Moreover, "the Court of International Trade has been granted broad remedial powers. *See* 28 U.S.C. § 2643 (2000). Specifically, the Court of International Trade's relief statute provides for entry of a money judgment 'for or against the United States in any civil action commenced under section 1581 or 1582 of this title,' id. § 2643(a)(1), and allows the court to 'order any other form of relief that is appropriate in a civil action....' Id. § 2643(c)(1)" *Shinyei Corp. of America v. U.S.*, 355 F.3d 1297, 1311 (Fed. Cir. 2004). Clearly the Court can fashion any of the remedies listed in the Complaint.

While Defendant proclaims that the government has a " 'legitimate governmental purpose' of enforcing trade laws and protecting domestic industry", there is no material injury, and therefore no rational basis for which to treat similarly situated persons differently. The ADD case is violation of the Equal Protection clause as such. Plaintiffs have clearly stated a claim to relief that is plausible on its face rising above speculation, for which Plaintiffs should be allowed to argue the merits of the Equal Protection claim.

**CONCLUSION**

For the foregoing reasons, the Defendant's Motion to Dismiss must be denied in its entirety and the Motion for Judgment on the Pleadings must not be granted. May the Court grant the case to continue to argue the merits of the claims.

Respectfully submitted,
/s/ Kyl J. Kirby
Kyl J. Kirby
**KYL J. KIRBY, ATTORNEY AND COUNSELOR AT LAW, P.C.**
1400 Lipscomb Street
Fort Worth, TX 76104
Tel: (214) 632-0841
Attorney for Plaintiffs LEXJET, LLC, ABAQA, LLC, and BRAND MANAGEMENT GROUP, LLC,

Date: November 13, 2026

## WORD COUNT CERTIFICATE OF COMPLIANCE

Pursuant to the U.S. Court of International Trade's Standard Chambers Procedures 2(B)(l), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Plaintiffs' Response, as computed by KYL J. KIRBY, ATTORNEY AND COUNSELOR AT LAW, P.C.'s word processing system (Microsoft Word for 365), is 5,644 words.

Respectfully submitted,
/s/ Kyl J. Kirby
Kyl J. Kirby
**KYL J. KIRBY, ATTORNEY AND COUNSELOR AT LAW, P.C.**
1400 Lipscomb Street
Fort Worth, TX 76104
Tel: (214) 632-0841
Attorney for Plaintiffs LEXJET, LLC, ABAQA, LLC and BRAND MANAGEMENT GROUP, LLC,

Date: November 13, 2026